1

Mark C. Watson, C.S.B. #178980
Matthew H. Weiner, C.S.B. #236394

2  **THE LAW OFFICES OF MARK C. WATSON**
1633 Bayshore Highway, Suite 341

3  Burlingame, CA  94010
Telephone:    (650) 692-4001

4  Facsimile:    (650) 692-4004

5  Attorneys for Plaintiff Steven Kassel

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

| | |
|---|---|
| STEVEN KASSEL | CASE NO.: 3:06-cv-03273 SC |
| Plaintiff | PLAINTIFF'S TRIAL BRIEF |
| v. | |
| UNITED STATES OF AMERICA | |
| Defendants | |
| CROSS-RELATED ACTION | |

21

22                **I    STATEMENT OF THE CASE**

23        Pursuant to 26 U.S.C. § 6700 et seq. (hereinafter referred to as "I. R. C.")  the Internal

24  Revenue Service assessed a penalty on Steven Kassel for allegedly promoting an abusive tax

25  shelter.  The alleged activity of Mr. Kassel was related to his involvement with an entity known

26  as The Tax People (hereinafter referred to as "TTP"). Pursuant to I. R. C. § 6703, Mr. Kassel paid

27  fifteen percent of the penalty and filed a claim for refund for the amount paid.  Thirty days from

28

the date of the payment and said filing ran and the IRS neither declined nor agreed to the claim of refund.  As such, said claim is deemed denied.  Kassel next filed the instant lawsuit within the allowable time period seeking said refund, or alternatively, to reduce the amount of the assessed penalty.

The United States Government (hereinafter referred to as the "Government") then filed a counterclaim seeking a judgment for the amount of the penalty.  Pursuant to section 6703(a), the Government has the burden of proving, by a preponderance of the evidence, that Mr. Kassel is liable for the penalty.  United States v. Estate Preservation Service  202 F. 3d 1093, 1096 (9th Cir. 2000).

## II   STATEMENT OF FACTS

Steve Kassel has spent 14 years as an enrolled agent.  An enrolled agent helps people solve disputes over the back payment of taxes with both the I.R.S. and the California Franchise Tax Board.  Mr. Kassel is not a C.P.A. and is does not prepare current tax returns for his clients.  However, due to his obligations as a member of the TTP's Affiliated Tax Professionals Network (hereinafter referred to as "ATPN"), Mr. Kassel's firm did prepare 17 tax returns for TTP  customers.  Mr. Kassel's primary occupation is to help taxpayers negotiate their arreages and payment schedule with both the IRS and the California Franchise Tax Board.  His motivation for joining TTP was to find new clients from the TTP customers.  Based on the TTP's product, Mr. Kassel felt that small businesses would be their primary market.  Such small businesses are his primary marketing target as well.  As such, Mr. Kassel felt that his involvement with TTP would create sales leads for his own business.

*Structure of The Tax People*

The overall structure of the TTP is important to understand Mr. Kassel's involvement and how his involvement relates to the Government's claim.  TTP has two separate units.  The first is the marketing side which sells and promotes its product.  Then there was the tax side, which is what Mr Kassel was involved with.  Generally, the people on the tax side prepared

1  returns and answered tax questions that the customers of TTP would have.

2  On the marketing side, Independent Marketing Associates (hereinafter referred to as

3  "IMAs") would sell the TTP product.  The IMAs did not report to Mr. Kassel and Mr. Kassel

4  did not oversee their work.  IMAs reported to others who were involved with marketing.

5

6  *Mr. Kassel's Involvement with TTP*

7  In the summer of 1999 Mr. Kassel was approached by Debi Foli to join The Tax People

8  as part of TTP's  Tax Team.  The Tax Team advised others on tax matters.  Mr. Kassel offered

9  advice on delinquent taxes.

10  Subsequently, TTP set up the ATPN.  Mr Kassel was a regional director.  In this role,

11  Mr. Kassel would organize Tax Professionals who, in turn, would assist and advise IMAs with

12  questions and problems of the IMAs clients.  As a member of the ATPN, Kassel also advised

13  IMA's on such matters as they related to unpaid taxes and disputes with the IRS.  In this

14  capacity, Mr. Kassel's held telephone conference calls to give IMAs advice with their clients

15  who had such disputes with the IRS.

16  While working with the TTP, Mr. Kassel realized that some of their practices and

17  suggestions were not in accord with actual IRS regulations.  Mr. Kassel then pointed out these

18  problems to the TTP.  TTP informed Kassel that they were incorporating his suggestions in

19  their materials.

20  While working with TTP, Mr. Kassel continually advised IMA's to follow the tax code

21  and IRS regulations.  He also gave this advice to his clients as well.  The evidence will show

22  that one of Mr. Kassel's associates, Steven Mullenniex had an argument with a client as the

23  associate did not believe that the client qualified for a home based business deduction.  Mr.

24  Mullenniex will testify that he had Mr. Kassel met with the client and that Mr. Kassel said that

25  they could not take the home business deduction.  As a result, the client became angry and took

26  his business elsewhere.

27  The evidence will also show that Mr. Kassel advised IMAs that the home based

28  business deductions could only be taken when a person operated an appropriate business from

their home.  At numerous conventions and meetings, Mr. Kassel continually advised IMAs that

they needed to follow the law.  He sent numerous e-mails and faxes toward this end.  Mr.

Kassel even argued with TTP officials that their promotional materials were incorrect.  On the

nationally  televised O'Rielly Factor, Mr. Kassel, specifically stated his position on home based

business deductions.  Mr. Kassel has a long history of publically pointing out tax preparers

who advise their clients to take illegitimate deductions.  Mr. Kassel has even cooperated with

the Government in this regard.  As such, it does not seem likely that Kassel would depart from

his normal pattern and practice and start to give improper advice to people.

### III    LEGAL ANALYSIS

The United States contends that Mr. Kassel violated section 6700 of the Internal Revenue

Code.  Said section states:

Any person who

(1)        (A)organizes (or assists in the organization of)- (I)a partnership or other

entity, (ii)any investment plan or arrangement, or (iii)any other plan or arrangement,

or

(B)participates (directly or indirectly) in the sale of any interest in an entity or

plan or arrangement referred to in subparagraph (A), and

(2)        makes or furnishes or causes another person to make or furnish (in

connection with such organization or sale)-

(A)a statement with respect to the allowability of any deduction or credit, the

excludability of any income, or the securing of any other tax benefit by reason of

holding an interest in the entity or participating in the plan or arrangement which the

person knows or has reason to known is false or fraudulent as to any material matter,

or

(B)a gross valuation overstatement as to any material matter,

shall pay, with respect to each activity described in paragraph (1), a penalty equal to the $1,000 or, if the person establishes that it is lesser, 100 percent of the gross income derived (or to be derived) by such person from such activity. For purposes of the preceding sentence, activities described in paragraph (1)(A) with respect to each entity or arrangement shall be treated as a separate activity and participation in each sale described in paragraph (1)(B) shall be so treated. Notwithstanding the first sentence, if an activity with respect to which a penalty imposed under this subsection involves a statement described in paragraph (2)(A), the amount of the penalty shall be equal to 50 percent of the gross income derived (or to be derived) from such activity by the person on which the penalty is imposed.

The Government has indicated that to prove show a violation of section 6700, it must prove the following:

1    That Kassel organized or assisted in the organization of a partnership, entity, plan, or arrangement OR

2    Participated directly or indirectly in the sale thereof; AND

3    Made or furnished or causes another to make or furnish false statements regarding the allowability of any deduction or credit, or excludability of income by participating in the plan; AND

4    That he knew or should have known that the statements were false to a material matter OR

5    If there was an overvaluation, then provide documentation.

In various documents which will be presented as evidence at trial, the Government admits that Facts 1 and 5 are not present and, as such, not part of there case against Mr. Kassel.  As such, to prevail, the Government must prove that Facts 2, 3, and 4 are present as to Kassel.  The Plaintiff feels that the Government will not prove Facts these required Facts.

A.    **Analysis of Fact 3**

1    The Government will have to show that Kassel made or caused another to make false

2  statements regarding the allowability of a deduction, credit, or excludability of income.  The IRS'

3  own "Proof of Facts Lead Sheet" fails to indicate any statements by Kassel that relate to any

4  deduction, credit, or excludability of income.  Paragraph 8 of the Government's counterclaim states

5  that:

6           The Tax People was an organization that developed and promoted
           the so-called Tax relief System ('TRS'), a program by which
7           individual customers use sham home-based businesses to turn
           personal expenses into purportedly deductible business expenses.
8           In actuality, the program merely advised customers to use illegal
           methods to decrease their reported tax liability, including claiming
9           unauthorized home business deductions.

10

11    However, during the discovery process, the IRS could not specifically identify the false

12  statements that were allegedly made by Kassel or who he allegedly caused to make false

13  statements.  In fact during his deposition, Agent Gathright could not identify any specific

14  statements and merely said that Kassel spoke at conventions, meeting etc.  But when asked what

15  Mr. Kassel said that was improper, Gathright did not know.  Gathright's testimony indicates that

16  he assumed that Kassel made such statements.  The Government will not produce any witnesses

17  that will testify as to what was said at these meetings.  In contrast, the evidence will show that

18  Kassel continually urged people to follow the law concerning home based businesses and other

19  IRS rules at these meetings.

20    Gathright's testimony indicates that Gathright assumed that Kassel was involved with

21  marketing and promoting the TRS.  During his deposition, Gathright admitted that Kassel had

22  joined TTP to handle and offer advise on delinquent taxes.  Without hearing any statements from

23  any person, Gathright concluded differently.  As such, Gathright's testimony is opinion evidence

24  and based upon speculation which resulted in his conclusion.  Since Gathright has not been

25  designated as an expert and since the Government has specifically stated that he is only a

26  percipient witness, Gathright cannot attest as to his conclusions and speculation.  As a percipient

27  witness, Gathright can only attest to what he personally observed, heard or otherwise perceived.

28

1

**B.      Analysis of Fact 4**

2       In support of their case, the Government puts forth evidence that Kassel has a Bachelor's

3  degree from the University of Maryland, and was a Revenue Officer for the IRS.  The Government

4  also states that Kassel is an Enrolled Agent and practices before the IRS and is a member of the

5  National Association of Enrolled Agents.  The Government also claims that Kassel hired another

6  Enrolled Agent, Steve Mullenniex, who specializes in home based businesses.

7       The Government further claims that Kassel held himself out as a "tax expert" in that he

8  testified  before Congress during the restructuring of the IRS, that he has been quoted in Worth

9  Magazine and the New York Times and was used by CNN and appeared on Good Morning

10  America.  The Government is also claiming that TTP advertised that Kassel was a tax expert and

11  that Kassel's titles indicated that Kassel had a high position and authority at TTP.

12       The Government then concluded that as an Enrolled Agent, based on his education and that

13  since he holds himself out as a tax expert, that Kassel had reason to know the "statements in the

14  TRS and other TTP materials were false and misleading with respect to the allowability of certain

15  deductions.

16       One problem that Government has is showing that Mr. Kassel knew or should have known

17  that statements in the "TRS and other TTP materials are false.  First, much of the statements and

18  evidence that Government relied upon was hearsay and statements by third parties.  For instance,

19  statements by the TTP (even if they are admitted as evidence) hat Kassel is an expert, that does not

20  mean that Kassel is an expert or that he held himself out as such.

21       Further, While Mr. Kassel is an Enrolled Agent, attended college, and is an expert on the

22  structure and collecting back taxes, that does not mean he is an expert  with respect to deductions.

23  Instead, Mr. Kassel is an expert on what the IRS can and cannot do when collecting back taxes and

24  negotiating for clients who owe back taxes.  This would be akin to family law attorneys holding

25  themselves out as experts and then  being held as an expert in a criminal law matter.

26       Moreover, Mr. Gathright, did not identify any causal relationship, between Kassel's

27  purported expertise and how he should have know that certain unidentified alleged statements were

28

1  false or misleading.  Again, much of what the government is relying upon is hearsay and secondary

2  evidence.  The evidence will show that in many cases, Agent Gathright relied on what people said

3  Mr. Kassel said.  In some cases, Agent Gathright relied on what documents that were prepared by

4  people other than Mr. Kassel as to what Mr. Kassel said.  In these cases, such double hearsay is

5  inadmissible.

6  **C.      Giving Advice As to  Home Based Business Deduction Is Not Illegal**

7          Through the discovery process, the Government has indicated that the abusive tax scheme

8  at issue involves a home based business deduction.  Importantly, pursuant to IRC § 280A,

9  taxpayers may take such a deduction when a business is legitimately operated out of a person's

10  home.  Agent Gathright summarily concluded that Kassel was advising clients to wrongly take a

11  home business deduction.  The evidence will show just the opposite.  Mr. Kassel told clients that

12  they could not advice clients to take such a deduction and even lost business because of his

13  position.  Thus, the Government must offer specific examples of Mr. Kassel violating the IRC or

14  IRS regulations.  However, during the discovery process the Government did not do so.

15

16  **D.      Alternatively The Instant Fine Must Be Reduced to $1000.**

17          Pursuant to Section 6700, a person who promotes an abusive tax shelter "shall pay, with

18  respect to each proscribed activity . . . a penalty in the amount of the lesser of $1,000 or 100% of

19  the gross income derived by that promoter.  Reiserer v. United States  032007  FED9 05-35615

20  (9th Cir 2007) (quoting from IRS section 6700).  In both written discovery and in the deposition

21  of Danny Gathright, the Government contended that there was only one violation by Mr. Kassel.

22  Both Agent Gathright and the written discovery responses of the Government state that they

23  penalized Mr. Kassel based on all of the income that he received from TTP.  As the code section

24  clearly indicates, the maximum fine that Mr. Kassel could be assessed would be $1,000.  Thus, at

25  the very least, Mr. Kassel would be entitled to a refund of the balance that he paid.

26

27

28

1

**E.      Because Agent Gathright May Not Offers Opinions or Conclusions During His Testimony, the Government Will Have a Hard Time Proving its Case**

2

3      The Government has not designated Gathright as an expert witness.  In fact they have not

4  designated any experts.  Instead, the Government specifically stated that Mr. Gathright would only

5  be appearing as a percipient witness.   As such, Agent Gathright cannot testify as to matters that

6  require expert testimony.  Any testimony that involves opinions will be severely limited.  The

7  Plaintiff plans to object to any opinion evidence that is not based on personal knowledge and

8  personal perception.  United States v. Durham  092206 FED9 05-30403 (9th Cir 2006) (holding

9  "Given the Rule's [FRE 701] first two limitations, opinion testimony of lay witnesses must be

10  'predicated upon concrete facts within their own observation and recollection—that is facts

11  perceived from their own senses, as distinguished from their opinions or conclusions drawn from

12  such facts.' ") (citing to  *United States v. Skeet*, 665 F.2d 983, 985 (9th Cir. 1982) (quoting

13  *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 847-48 (10th Cir. 1979)).

14      In the present case, Gathright did not conduct interviews, did not observe Mr. Kassel when

15  he allegedly made statements, nor did he talk to anyone else who did observe Mr Kassel.  Agent

16

17  Gathright testified in his deposition that Mr. Kassel's conference calls were sales pitches without

18  having any information from anyone as to what was said on these calls.  This conclusion was a

19  pure assumption of   In fact, Gathright's entire investigation was very limited and not based on

20  many observances and the only person he interviewed was Mr. Kassel.  Despite having names of

21  witnesses, access to the returns prepared by Kassel, and other information at hand, took no action

22

23  to verify his conclusions.  Agent Gathright's statements in his papers and during his deposition

24  were extremely conclusive, based on hearsay, and lacking of personal knowledge.  In other

25  respects, Gathright's testimony was based on secondary sources that lack the proper foundation.

26  As such, the Plaintiff will be raising numerous objections to much of the testimony of Gathright.

27

28

1

**F.      Other Important Factors Concerning the Investigation of Mr. Kassel**

2

3

4

As a revenue agent, Gathright had access to the names of all of Mr. Kassel's clients and all of the returns that Kassel prepared. Yet Gathright never bothered to call any of Kassel's clients

5

or look at his returns. In fact, the evidence will show that Kassel's returns were reviewed by others

6

at the IRS and nothing wrong was found. Mr. Kassel was also interviewed by CID agents and

7

Federal Prosecutors, and none of them found that Mr. Kassel did anything wrong. Gathright could

8

not identify with specificity any abusive activity that Mr. Kassel allegedly performed. From his

9

10

deposition testimony, it appears as if Gathright was told by an unnamed person to investigate

Kassel and given some unverified facts. Seemingly, Gathright proceeded on the basis that said

11

facts were true and did not seek to verify them. Apparently, Gathright began his investigation

12

13

based on the conclusion that Mr. Kassel was doing something wrong, and never really looked into

14

the facts of the case.

15

16

**IV      CONCLUSION**

17

The Government bears the burden of proving that Kassel promoted an abusive tax shelter.

18

As such, the Government must show each element needed for Mr. Kassel to be liable under IRC

19

20

§ 6700. The Government has not and will not show any specific examples of Kassel making or

causing others to make false statements concerning tax deductions. The Government will not be

21

22

able to show that Kassel knew or had reason to know that any statements made by others were

23

false or misleading. As such, the Government will not prove its case. Therefore, the Court must

24

find that Mr. Kassel is not liable for the assessed penalty and order the Government to return all

25

monies paid by Kassel.

26

27

28

1

2

3

4   Dated: _____

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,
Law Offices of Mark C. Watson

_____
Mark C. Watson
Attorneys for Plaintiff Steven Kassel