KEVIN V. RYAN
United States Attorney

JACQUELINE C. BROWN
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 7238
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 616-9482
Fax: (202) 514-6770
E-mail: jacqueline.c.brown@usdoj.gov
Attorneys for Defendant United States

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| STEVEN H. KASSEL,<br><br>            Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>            Defendant. | Civil No. 3:06-cv-03273 |

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW OF THE DEFENDANT UNITED STATES

The United States proposes the following findings of fact and conclusions of law:

1. Plaintiff, Steven H. Kassel is an enrolled agent licensed to represent customers before the Internal Revenue Service and also operated his own business in San Bruno, California.

2. From Fall 1999 through December 2000, Kassel worked with Renaissance, The Tax People (TTP), an organization based in Topeka, Kansas. TTP was founded in 1995 by Michael Cooper, the President, and operated by Cooper, Todd Strand, the Vice-President, and Jessie Cota, the Director of Taxation. Cota formerly worked with the IRS.

3. In 1999 and 2000, Kassel worked with TTP part-time and continued to operate his own business. Kassel spent approximately 20-30% of his time in 1999 doing TTP work. Kassel spent a larger percentage of his time in 2000 doing TTP work.

4. TTP developed and sold various packages promoting strategies by which customers could reduce their claimed tax liabilities by re-selling the TTP products as a home-based business. In 1999 and 2000, TTP primarily sold the Tax Relief System (TRS), which included the TRS manual, audio cassettes, pamphlets, and other material that advised customers on deductions to claim on their federal income taxes.

5. TTP sold the TRS system through a multi-level marketing scheme whereby TTP customers ultimately became Independent Marketing Associates (IMAs) who sold the TRS system to other customers. TTP marketing associates earned their income from TTP only by recruiting new customers and for new customers' subsequent recruiting. The overwhelming majority of TTP customers were also TTP marketing associates.

6. IMAs often sponsored presentations for prospective customers, during which the IMAs presented information about the TRS and the tax benefits customers could enjoy by purchasing the TRS system.

7. The TRS manual and other documents advocate, that by selling the TRS system as a home-based business, customers: 1) claim deductions for home mortgage and utility payments by spreading the TRS materials throughout various rooms in the home to defeat the exclusive use rule, 2) claim deductions for wages up to $4,400 to children ages 6-17 for their help in operating the home business, 3) claim deductions for the entire cost of health insurance and medical expenses, on behalf of their entire families, 4) claim deductions for educational assistance payments made to employees, 5) claim deductions for meals and entertainment expenses, 6) claim deductions for family vacations, 7) claim deductions for commuting and other vehicle costs.

8. TTP provided a guarantee that customers would realize a minimum of $5,000 in additional tax deductible expenses based on the TRS home business. TTP also advertised that the TRS system was "audit-proof" and that TTP customers had been successful in each audit conducted by the IRS.

9. Kassel made two direct sales of the TRS manual to customers.

10. In his work with TTP from 1999 to 2000, Kassel was a presenter at as many as ten presentations, seminars, and meetings for prospective and current customers. At the presentations, Kassel discussed the tax relief system and discussed some of the deductions advised in the TRS materials. At some of the meetings, the IMAs played the TTP marketing videotape.

11. Before becoming a presenter, Kassel witnessed several presentations hosted by TTP marketing associates. During the presentations, Kassel heard TTP marketing associates providing misleading and inaccurate information regarding the TRS system and the tax laws. Kassel also found fault with conclusions that could be drawn from the videotape.

12. Kassel also hosted a weekly conference call for TTP in which he provided customers with substantive tax advice. Kassel's calls focused primarily on tax resolution matters, but he also discussed the TRS system and answered customers' questions regarding the TRS.

13. Kassel listened to several conference calls hosted by Jessie Cota, Tom Steelman, the author of the TRS manual and a former IRS revenue agent. During the calls, Kassel heard Steelman provide customers with information and advice that was misleading or otherwise inconsistent with the revenue laws.

14. At the request of TTP, Kassel attended a meeting on behalf of TTP in July 2000 with a TTP customer and the criminal investigative division of the IRS. At the meeting, Kassel discussed the TRS system.

15. In 2000, Kassel became a regional director of the Affiliated Tax Professionals Network. ATPN was comprised of enrolled agents, attorneys, accountants, and other tax professionals. The purpose of ATPN was to provide substantive tax advice and representation to TTP customers.

16. Kassel represented TTP at several IRS nationwide tax forums, during which he spoke to various tax professionals about TTP and distributed promotional material. Kassel participated in such activities for the purpose of encouraging tax professionals to join

1       ATPN in order to provide substantive tax advice and representation to TTP customers.
2       Professional advice and representation was part of the TRS system package.
3 17. In early 2000, Kassel also participated in re-writing the TRS manual. Kassel is listed as a
4       contributing editor. Kassel also recorded a segment for the TTP promotional video
5       entitled "Take a Bite Out of Your Taxes."
6 18. During 1999 and 2000, TTP distributed various materials advertising Kassel's
7       involvement with TTP and his former experience as an IRS revenue officer, his
8       testimony before Congress, and the fact that he has been quoted in newspaper articles.
9       Kassel allowed TTP to use his name, quotes, and credentials for advertising purposes in a
10       monthly newsletter, in the TRS manual, and in ATPN promotional materials.
11 19. During 1999 and 2000, Kassel participated in internet message board during which
12       Kassel made statements regarding the legality and validity of the TRS system. Kassel
13       also corresponded with TTP customers/marketing associates by e-mail. Kassel answered
14       prospective customer questions and directed concerns to TTP officers.
15 20. In 1999, Kassel proposed to TTP President, Michael Cooper, that he receive a bi-weekly
16       compensation schedule for his work with TTP. Cooper approved Kassel's request and
17       Kassel began receiving periodic payments in Fall 1999. In 1999 and 2000, TTP paid
18       Kassel a total of $29,633 for his efforts.
19 21. In October 2000, TTP and Cooper were sued by the State of Kansas in the District Court
20       of Shawnee County for committing deceptive acts and practices in violation of the
21       Kansas Consumer Protection Act. The court issued a temporary injunction barring TTP
22       and Cooper from marketing products and services to new customers and imposed
23       restrictions on business activities with existing customers.
24 22. In December 2000, Kassel ended his affiliation with TTP.
25 23. On or about August 5, 2005, the IRS sent proper notice to Kassel of the assessment in the
26       amount of $29,633. The IRS has made a demand for such payment. Kassel has not paid
27       the entirety of the assessed penalty.

Conclusions of Law

1. The Tax Relief System contained misleading and inaccurate information regarding the tax deductibility of expenses.

2. The Tax Relief System contained misleading and inaccurate information about the tax and other benefits to be gained from the purchase and resale of the TRS system.

3. Kassel participated in the planning and marketing of the TRS system by participating in e-mail exchanges and other conversations regarding the content and marketing of the TRS system.

4. Kassel participated in the sale of the TRS system on two separate occasions.

5. Kassel participated indirectly in the sale of the TRS system by speaking at TTP presentations to prospective customers on as many as ten occasions, and by allowing his name and likeness to be used to advertise and promote the sale of the TRS system.

6. Kassel participated indirectly in the sale of the TRS system by hosing conference calls that were advertised to customers as a benefit of purchasing the TRS system.

7. Kassel participated indirectly in the sale of the TRS system by helping to re-write the TRS manual, which was then directly sold to customers by TTP marketing associates.

8. Kassel participated indirectly in the sale of the TRS system by recording a segment of the TTP promotional videotape which was played for prospective customers to encourage them to purchase the TRS system.

9. Kassel participated indirectly in the sale of the TRS system by recruiting tax professionals at IRS tax forums to join ATPN to provide advice and representation to TTP customers.

10. Kassel participated, directly and indirectly, in the sale or promotion of the TRS system on more than thirty separate occasions.

11. The TRS manual and documents contain inaccurate, false, and misleading statements regarding the deductibility of expenses and the securing of other tax benefits.

12. Kassel engaged in such activities knowing that the advice TTP provided its customers regarding the tax benefits of the TRS system and the deductibility of expenses was false and misleading.

13. Kassel engaged in such activities knowing that the TRS system materials sold to customers contained false and inaccurate information, unreasonable examples and scenarios, and other misleading information relating to the deductibility of expenses.

14. On several occasions, Kassel stated that the TRS system was neither false nor misleading though he knew that such materials and TTP's statements were both false and misleading.

15. Kassel engaged in such activities in the attempt to reap financial benefits from the growth of TTP's customer base.

16. Kassel did reap financial benefits in the amount of $29,633 from his work and affiliation with TTP.

17. In engaging in such conduct, Kassel is subject to penalty pursuant to I.R.C. § 6700.

18. The assessed penalty of $29,633 is correct based on Kassel's conduct and activity. A penalty of $1,000 based on each activity subject to penalty would be larger than the assessed amount.

19. The United States is entitled to judgment for the entirety of the $29,633 penalty assessed against Kassel.

          Respectfully Submitted,

          KEVIN V. RYAN
          United States Attorney


          s/ Jacqueline Brown
          JACQUELINE C. BROWN
          Trial Attorney, Tax Division
          U.S. Department of Justice
          Post Office Box 7238
          Ben Franklin Station
          Washington, D.C.  20044
          Telephone: (202) 616-9482

Dated: March 26, 2007

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing Proposed Findings of Fact and Conclusions of Law of the Defendant United States has been made upon the following by sending a copy by e-mail and by depositing a copy in the United States mail, postage prepaid, this 26th day of March, 2007.

>   Mark C. Watson
>   The Law Offices of Mark C. Watson
>   1633 Bayshore Highway, Suite 341
>   Burlingame, CA 94010

>   s/ Jacqueline Brown
>   JACQUELINE C. BROWN
>   Trial Attorney, Tax Division
>   U.S. Department of Justice
>   Post Office Box 7238
>   Ben Franklin Station
>   Washington, D.C.  20044
>   Telephone: (202) 616-9482